PLATA SUGAR COMPANY, INC., Petitioner, v.
PUERTO RICO SUGAR BOARD, Respondent.

No. 16. Submitted April 3, 1959.—Decided June 7, 1961.

834

*Fiddler, González & Nido* for petitioner. *Alejandro Romanace* for respondent. *José Luis Cancio* for the colono.

MR. JUSTICE SERRANO GEYLS delivered the opinion of the Court.

The question for decision in this petition arises from § 6 of the Sugar Act (5 L.P.R.A. § 375). Bernardo Méndez Jiménez cultivates several cane plantations located in the ward Hato Arriba of the municipality of San Sebastián and one in the ward Maravilla Este of Las Marías and he personally is in charge of delivering in trucks the cane to the mill. In the 1954 crop season he ground the cane of all said plantations at the mill of Plata Sugar Co., Inc. petitioner herein. On October 28 of said year, Méndez sent to the Sugar Board a notification that he was shifting the grinding of the 1955 season, from the Central Plata to Central Igualdad. He stated his intention of grinding forty per cent of his cane at the Central Igualdad and the remaining sixty per cent at the Central Plata and he reported that his cane was cultivated in his properties of wards Maravilla Este of Las Marías and Hato Arriba of San Sebastián. The request was notified to the Central Plata and it did not object. The Board approved the shift.

Later a controversy arose between Méndez and the Central Plata as to the manner of computing the compensation

for hauling and delivery stipulated in the Sugar Act. Méndez alleged that he could send cane from any of his farms to the central and that it had to pay the compensation on the basis of the distance traveled by said cane. The Central maintained that Méndez should send to it the cane from the farms nearest to the mill and compute the compensation on that basis. Finally, the parties agreed that Méndez would submit the question to the Sugar Board and that meanwhile the central would pay the compensation on the basis of a "weighted average" of the distance and production of all the farms. Méndez appealed to the Board, and after the ordinary proceedings, the latter ordered the central to pay the compensation according to the distance traveled by the cane from the farms of origin to the mill's batey. Subsequently a petition for reconsideration was denied.[1]

At the request of the Plata Sugar Co., Inc. we issued the writ for review in conformity with the pertinent provisions of the Sugar Act. Subsequently we stayed the execution of the Board's order, with the consent of all the parties and upon the posting of bond.

In its findings of fact the Board stated:

"2. The distance from said farms to the Central Plata's batey according to Exhibit A of the respondent, are the following:

| Farms | Kilometers |
|-------|-----------|
| a. Villa Luz | 3.52 |
| b. Márquez | 2.88 |
| c. Baldomero | 2.24 |
| d. Cabán | 4.32 |
| e. Maravilla | 14.72 |

"3. Central Plata computed the payment for hauling and delivery by said colono on the basis of an average of 7.92 kilometers and it paid to the colono at the rate of eight kilometers (Tr. Ev., p. 10) which is equivalent to fifty-five cents per ton of cane as a provisional payment.

---

[1] One of the three members of the Board dissented.

"4. There is no dispute as to the distances between the natural exits of the afore-mentioned farms and the Central Plata's batey.

"5. The colono Bernardo Méndez Jiménez ground part of his cultivated cane from his farms at the Central Igualdad.

"6. The property of the colono Bernardo Méndez Jiménez, nearest to the Central where the cane that is ground at both centrals is cultivated is 4 kilometers from Central Plata and thirty-six kilometers from Central Igualdad.

"7. The property of colono Bernardo Méndez Jiménez farthest away from Central Plata where the cane that is ground in both centrals is cultivated is fifteen kilometers from Central Plata and fifty-five kilometers from Central Igualdad.

"8. Central Plata estimated that the total production by colono Bernardo Méndez Jiménez in the aforesaid farms would be 6,850 tons of sugar cane to be produced in a total area of 249.15 cuerdas.   (See Exhibit A of Central Plata.)

"9. The estimated difference in the payment for hauling and delivery between the average system alleged by Central Plata and that imposed by the Act is equal to $690.00.   (See Tr. Ev., pp. 21, 22.)

"10. The Board takes official notice that in the Crop Marketing Compliance Report for the 1955 season, submitted to this Board by Central Plata, the colono Bernardo Méndez Jiménez ground 4228.2 tons of sugar cane in Central Plata."

In its conclusions of law, the Board dismissed the allegation of unconstitutionality of § 6 made by the central; it also held that said section did not authorize the "weighted average" method suggested by the petitioner but only the payment based on the distances actually traveled by the cane. ▆▆▆ The petitioner alleges before us that the Board's interpretation of § 6 is incorrect; that otherwise § 6 would be unconstitutional; and that the Board rendered its order without having proof of where the cane came from.   Let us see.

Section 6 provides:

"The following terms and conditions shall govern the transportation and hauling of the *colono's* cane:

"(a) The central may provide means for the transportation

of its *colono's* cane from the *colono's* farms to the central, and when such means is so provided, the central shall pay to the *colono* seven and one-half (7½) cents on each ton of cane delivered, as compensation for hauling expenses; *Provided,* That if during the grinding season of 1950 any central has paid a higher amount for such expenses, the latter shall be the governing rate for said central. In case the central does not provide such means of transportation, it shall be bound to compensate the *colono* in the manner and to the extent hereinafter established, for the transportation of said cane from the *colono's* farm to the point of delivery designated by the central, whether such transportation is made with equipment belonging to the *colono* or leased by him. The central shall be bound to provide gratuitously to all its *colonos* hoisting service and the necessary personnel for the operation thereof at each point designated by the central for the delivery of cane. In the case of a new *colono,* or one who desires to change the point of delivery of the cane, and the central and the *colono* do not reach an understanding as to the point of delivery, the Board shall determine the point where the central shall receive the cane of the *colono* from among the ones designated by the central.

"(b) In those cases where the *colono* transports his cane, the central shall compensate him at the basic rate of fifteen (15) cents for each ton of cane transported, as hauling expenses, plus the sum of five (5) cents for each ton per kilometer, from the farm to the point of delivery, provided the distance to be covered from the farm to the point of delivery is one-half kilometer or more; *Provided,* That the *colono* shall be entitled to receive the basic compensation of fifteen (15) cents even if the distance to be covered from the farm to the point of delivery is less than one-half kilometer. For the purpose of this compensation, the distance shall be determined from the normal or natural exit in the *colono's* farm where the cane was cut, to the point of delivery designated by the central. If upon determining the weight and the distance in the transportation and hauling of the cane, there results a fraction of a kilometer or of a ton, a proportional compensation shall in both cases be paid for such fraction.

"(c) In those cases where portable tracks have been used by the central for the transportation of a *colono's* cane, the central shall be bound to furnish to the *colono,* without any cost whatsoever to the *colono,* the said portable tracks and the neces-

sary rolling material; and it shall also be bound to pay to the *colono,* as hauling expenses, five (5) cents for each ton of cane. The central may discontinue the practice of furnishing to its *colonos,* either directly or through any subsidiary entity, agent or contractor, portable tracks, provided it obtains the approval of the Board to do so. The Board shall be empowered to order any central to discontinue the use of any transportation system which, in the judgment of the Board, may be prejudicial to the interests of the *colonos* or of the industry.

"(*d*) The compensation hereinabove provided for transportation and hauling, shall be paid weekly by the central.

"(*e*) The centrals shall be liable to the *colonos* for the cane of the latter from the time it is received by them at the point of delivery designated by the central, except in cases of force majeure, or for reasons beyond the control of the central.

"In no case shall the central be under obligation to pay more than one dollar for transportation and hauling.

"With respect to the canes of the island of Vieques which are transported to Puerto Rico, insofar as hauling and delivery is concerned, the provisions of the Public Service Commission for the 1951 grinding season shall be maintained, until the Board, after hearing the parties, provides otherwise, which provision shall then govern."

It is evident that the quoted provision contains a detailed and careful regulation of a very important matter in the sugar industry. It covers in detail the cases in which the central provides the means of transportation and those in which it is provided by the colono, the exact compensations that should be paid, the way to compute them and pay them, their maximum limit, the special rules for the use of portable tracks, the central's and colono's responsibilities, and the power of the Board in diverse situations. Paragraph (*b*) governs the problem presented in this petition. When the colono is in charge of the transportation of his cane, he has the right to receive from the central for hauling a basic compensation of fifteen cents per ton of cane delivered, and an additional compensation of five cents per ton per kilometer "from the farm to the point of delivery, provided

the distance to be covered from the farm to the point of delivery is one-half kilometer or more. . . ." Immediately following, the Act provides clearly the formula for the computation: "For the purpose of this compensation, the distance shall be determined from the normal or natural exit in the *colono's* farm where the cane was cut, to the point of delivery designated by the central. . . ."

There is no difficulty in applying this formula when the colono cultivates a single farm. Section 3 of the Sugar Act (Sess. Laws, 1951, pp. 1138, 1142; 5 L.P.R.A. § 372), imposes on the central the obligation to grind the cane of a colono who may have been its colono during any of the three previous years and of any new colono if it has the sufficient grinding capacity to do so. As a purely legal question, and if there exists such a capacity, any central is bound to grind the cane of any colono, no matter where his farm is located, and to pay him the due compensation for hauling and delivery.

The law, however, was not made on a clean slate. The extensive legislative and administrative [2] experience accumulated in the course of years made it evident to the legislators that there were powerful economic and geographical factors that would greatly limit the colono's free choice. Among them undoubtedly is the mill's efficiency, the distances between the farms and the central, the accessibility of the roads, the facilities of transportation and its cost, the dates and duration of the grinding seasons, the turns for delivery established by the central, the weather conditions, the contractual and other kind of relations between the central and the colono, etc. Therefore, it was beyond con-

---

[2] "No industry has been more extensively regulated in the public interest than the sugar business in Puerto Rico." *A. Roig Sucrs.* v. *Sugar Board*, 77 P.R.R. 324, 330 (1954). Pages 330 to 339 of said judgment describe the experience prior to the Act of 1951. See, also the Regulation on Sugar Companies approved by the Public Service Commission on June 29, 1946.

sideration that a colono from the East of Puerto Rico would, for example, send his cane to a mill in the West. For greater certainty the Act added another restrictive element. In the aforesaid § 6 it was expressly provided that "In no case shall the central be under obligation to pay more than one dollar for transportation and hauling." As the legal compensation per ton is fifteen cents for hauling and five cents per kilometer for delivery, the maximum of one dollar tends to discourage the delivery of cane to be ground to a central when the point of delivery is more than seventeen kilometers away from the farm of origin. The central, however, is in complete liberty to offer greater compensations to the colonos.

The petitioner, however, claims that said economic and legal picture changes when the colono cultivates several farms. It alleges that in that case the colono does not have "the right to choose, at his fancy, the farthest farms to send the cane to the mills and compel the latter to pay him for the distances actually traveled by said cane." [3] In its opinion said right should be substituted by a rule which binds him to send to the central the cane from the farms nearest to the mill or at least, by another allowing the use of the "weighted average" formula. However, the petitioner does not give us a single legal or economic reason to support its interpretation. Nor have we found it in our search and consideration of the matter. What is really sought is to modify the clear and specific provision of law and introduce a new formula to render it applicable only to the colonos who cultivate more than one farm, and which would have the effect of granting to the centrals, in said cases, the power to determine the farms from which the cane they are going to grind should come. That result is contrary to the colono's right of taking

---

[3] As an actual fact the colono did not choose the farthest farms, but he sent to the Central the cane from all of his farms. The evidence also shows, as we have seen, that the colono's farms were all closer to the Central Plata than to any other mill (Central Igualdad) where the colono also sent his cane.

his cane to the factory most convenient to him and to the central's obligation of grinding the cane if it has the capacity to do so. It would serve to renew in part the previous system of production zones [4] which was discarded by the present act, but made worse, because then the central, and not a government agency, would be the one to make the grinding assignments. This result can not be sanctioned by neither the Board nor by this Court.

We concluded therefore, that the Board acted correctly in deciding that a colono who cultivates several farms has the right, subject to § 3 of the Sugar Act, to choose the farms from which he is to send the cane to a central and that the latter is bound to grind the cane and pay him, up to the maximum of one dollar, the compensation for hauling and delivery provided by § 6 on the basis of the distance actually traveled by the cane "from the normal or natural exit of the farm . . . to the point of delivery designated by the central."

■ The objections of a constitutional nature alleged by the petitioner against that rule are obviously untenable.[5] They are based on case law which is inapplicable because of their facts or because they rely on a concept of the economy and of the government's function decidedly *passé*. The constitutional validity of § 6 has been repeatedly upheld by judgments of this Court. In *A. Roig Sucrs.* v. *Sugar Board, supra* at 328–339, speaking through Mr. Chief Justice Snyder, we made a careful study of the entire problem and in the light of vital historical, economical and social factors we upheld the validity of the Act as well as of its § 6. We affirmed said decision in *Eastern Sugar Associates* v. *Sugar Board*, 77

---

[4] Sections 4 and 42 of Act No. 221 of May 12, 1942 (Sess. Laws, p. 1176).

[5] It states that the act on one hand binds the central to grind the colono's cane and on the other hand permits him to control the distance element between the farm and the point of delivery and therefore, to reduce the amount of compensation of the central, and that that plan is, therefore, arbitrary, whimsical and unreasonable.

P.R.R. 339, 354 (1954) ; *Eastern Sugar Associates* v. *Sugar Board*, 77 P.R.R. 354, 369–371 (1954) ; and *Mayagüez Sugar Co.* v. *Sugar Board*, 79 P.R.R. 401, 402 (1956). The same ruling has been held in the federal jurisdiction. *Antonio Roig Sucrs.* v. *Sugar Board of Puerto Rico*, 235 F.2d 347, 353–354 (1956) ; *cert. denied* 352 U.S. 928 (1956). It suffices to say, as a summary answer to the central's allegations, that it has not added anything new to the arguments against § 6 which were examined and rejected in the aforesaid decisions, and that, furthermore, it has not proven in any way that the application of said section to the specific circumstances of this case is unreasonable, arbitrary or whimsical or that it is tantamount to the forfeiture of its property or binds it to operate with losses or insufficient profits.

The allegation that the Board erred in ordering the payment to the colono without it having been determined where the cane sent by him came from lacks merits. The Board received sufficient oral and documentary evidence on said matter, at two hearings, one of them devoted exclusively to said purpose. There is sufficient proof in the record and in Exhibit A of petitioner itself to support the Board's order and to do the necessary computations.

The order entered by the Sugar Board will be affirmed with costs and expenses on the petitioner in conformity with § 33 (5 L.P.R.A. § 402) of the Sugar Act.